JAMES C. BOYNTON *versus* WILLIAM S. GRANT.

The person who subscribes the return of the appraisers, by the use of his whole name, is sufficiently identified as the same person who is mentioned in the certificate of the oath, and in the officer's return by his surname only, where the officer's return refers to that of the appraisers thus subscribed, (in which the administration of the oath is also set forth,) and it speaks of "*the said appraisers*" as having viewed the premises, &c.

The levy of an execution, against two judgment debtors, upon real estate, is void, unless the officer's return thereof show that the debtor, whose estate is taken, chose one of the appraisers, or neglected to do so upon being duly notified.

The return, which states that, "N. W. being chosen by myself, and W. P. being chosen by the creditor, and —— I., being chosen by myself also, *the debtor neglecting to select one,*" is insufficient.

When the appraisers' return states that they viewed a "certain *tract of land*" showed to them as *the estate* of the judgment debtor, and that they appraised *said land,* and set *it* out by metes and bounds, &c.; this language, in the absence of any words of limitation, may be understood as stating the "*nature of the estate,*" &c, as required by R. S., c. 76, § 3.*

The record of an officer's return of a levy must show the seizure to have been within thirty days after judgment, in order to be good as against intervening *bona fide* purchasers.

An officer's return of a levy cannot be amended according to the facts, after having been recorded, to the injury of intervening *bona fide* purchasers.

---

* The "nature of the estate" need not be now stated in the appraiser's return. *Vide* Pub. Laws of 1863, c. 165.

On Report from *Nisi Prius*, Appleton, C. J., presiding. Writ of Entry.

Plea, general issue, and brief statement alleging title in the defendant.

To make out his case, the demandant introduced the original writ, *James C. Boynton* v. *Joseph H. Vigoreux* and *O. P. Quincy*, dated Feb. 11, 1851, returnable to the D. C. M. D. Lincoln county, Feb. term, 1851; the officer's return of attachment thereon, dated Feb. 11, 1851; the judgment in said suit in S. J. Court, Sagadahoc county, April term, 1859; (said judgment was rendered on April 30th, 1859;) the execution issued on said judgment, dated May 12th, 1859; the officer's return of the levy on said execution, dated June 6, 1859, which was recorded on July 6, 1859.

Plaintiff also offered, subject to tenant's objection, the annexed affidavit, marked A, and moved for leave for the officer to amend his return in accordance with the facts stated therein.

The premises described in plaintiff's writ are the same as described in his levy.

Tenant, in defence, introduced the record of a deed of warranty from said Joseph H. Vigoreux to Edwin S. Vigoreux, dated March 8, 1853, acknowledged and recorded same day; and he also introduced the records of several deeds of warranty, showing that the same premises were conveyed from said Edwin S. Vigoreux by mesne conveyances to the tenant on 18th day of November, 1857, acknowledged and recorded on the same day. Said deeds all embrace the same premises described in plaintiff's writ. He also introduced, subject to objection, the officer's return of his attachment on said writ, *Boynton* v. *Vigoreux & al.*, to the registry of deeds, Kennebec county, received and entered of record on the 15th day of February, 1851.

(The tenant offered to prove that the separate return, marked B, of the officer on said execution, certifying that he seized said premises on the 28th day of May, 1859,

which is not recorded, has been made on said execution since the levy was recorded, without authority, and is no part of the original return of said levy, but the evidence was excluded by the presiding Judge.)

Demandant then offered the record of said attachment, marked C, in the registry of deeds of Kennebec county, subject to objection, which may be referred to by either party.

The case was then taken from the jury to be reported for the decision of the Law Court, on so much of the evidence offered or reported as is legally admissible ; and, if the action can be maintained, tenant is to be defaulted, otherwise judgment is to be for the tenant.

(A.)

"I, Elbridge Berry, on oath, say, that I seized the land described in my return on the execution, *James C. Boynton* v. *Joseph H. Vigoreux & al.*, on the 28th day of May, 1859, and, at the same time, went on to the land and ascertained the boundaries thereof.   The creditor and myself, as officer, at the same time chose the appraisers, William Palmer and Noah Woods.   Said Vigoreux was out of town at the time, and I delayed until the 5th of June, 1859, for him to return home and choose an appraiser.   He was notified to choose one appraiser, but neglected.   The Irish named in my return, is Joseph Irish.          " Elbridge Berry.

"December 10, 1862."

"Kennebec, ss., Dec. 10th, 1862.—Then personally appeared Elbridge Berry, above named, and made oath to the truth of the foregoing by him signed.   Before me,

"Nath'l M. Whitmore, *Jus. Pacis.*"

(B.)

Copy of return on execution, *not recorded.*

"Kennebec, ss., May 28, 1859.—By virtue of this execution, I have this day seized a piece or parcel of land, lying in the town of Farmingdale, in said County, as the property of the within named Joseph H. Vigoreux, the same having been attached on the original writ, Feb. 11, 1851, and

bounded as follows, to wit." (Here follows a description, by metes and bounds, of the same land described in the appraisers' return.)     Signed,

"Elbridge Berry, *Dep. Sheriff.*"

So much of the returns and certificates on the execution recorded, as is material, is as follows:—

"Kennebec, ss., June 6, 1859.—Then personally appeared Noah Woods, William Palmer, ——— Irish, all of said county, who made oath, that, in appraising, &c., they would act faithfully and impartially, &c., before me.

"Elbridge Berry, *Dep. Sheriff.*"

"Kennebec, ss., June 6, 1859.—We, the subscribers, *having this day been duly appointed*, &c., *have this day viewed a tract of land* lying in Farmingdale, in said county, shown to us by Elbridge Berry, Esq., for and in behalf of the creditor, as *the estate* of the said Joseph H. Vigoreux, which said *tract of land* is bounded as follows, to wit: beginning, &c., (here follows description of land by metes and bounds,) which said *tract of land* we have on our oaths, &c., and we have set out the said *tract of land* by metes and bounds to the creditor within mentioned, to satisfy this execution and all fees.   In witness whereof," &c.

Signed,          "Noah Woods,
                  "William Palmer,
                  "Joseph Irish."

"Kennebec, ss., June 6, 1859.—The debtor within named, failing to satisfy this execution, &c., and the creditor within named, &c., thinking proper to levy the same on the real estate of the within named Joseph H. Vigoreux, one of the debtors within named, &c., I have *this day* caused Noah Woods, William Palmer, ——— Irish, all of said county, being three disinterested and discreet men, to be duly sworn, &c., to appraise such real estate of the within named J. H. Vigoreux as should be shown them, &c., *as will appear by the foregoing certificate of myself*, the said Noah Woods being chosen by myself, and William Palmer being chosen by the creditor, and ——— *Irish being chosen by myself*

*also, the debtor neglecting to select one,* &c., * *. * * *and on the same day,* by direction of the creditor, I levied this execution on the same tract of land, &c. I therefore return this execution wholly satisfied." Fees stated.

Signed,          "Elbridge Berry, *Dep. Sheriff.*"

"Kennebec, ss., June 6, 1859.—Received of Elbridge Berry, Deputy Sheriff, seizin and possession of the before described real estate, in full satisfaction," &c.

Signed,                    "J. C. Boynton."

"Kennebec, ss., Received July 6, 1859.—Entered and compared with the original, by

"J. A. Richards, *Register.*"

(C.)

" To the Register of the county of Kennebec:—

"Kennebec, ss., Feb. 11th, 1851.—I have attached all the right, title and interest that the defendant has in and to all real estate in the county of Kennebec.

"E. Marshall, *Dep. Sheriff.*

"Attest, E. Marshall, *Dep. Sheriff.*"

"The foregoing is a copy of my return of an attachment made by me on a writ dated Feb. 6th, 1851, returnable to the District Court, Middle District, next to be holden at Wiscasset, Lincoln county, on the fourth Tuesday of Feb. next, in favor of James C. Boynton of Richmond, and against Oliver Quincy and Joseph H. Vigoreux of Gardiner, and the sum sued for in said writ is seventy-four dollars and seventy-two cents, and the *ad damnum* is ninety dollars.          "E. Marshall, *Dep. Sheriff.*"

"Kennebec, ss., Registry of Deeds, May 27, 1863.—A true copy from the original filed in said registry, Feb. 15, 1851."          Attest,          "J. A. Richards, *Register.*"

*N. M. Whitmore*, for the plaintiff, argued:—

1st. The plaintiff's title to the land described in his writ is perfect, and he should have judgment in his favor unless the levy is defective, or the lien on the land by virtue of the attachment was lost, by neglect to take it "in execution" before the lapse of thirty days after judgment.

1st. The seizure was made, as appears by the officer's return, within the thirty days, viz., May 28, 1859. This is a "taking of the land in execution." The statute does not require the levy to be made or even commenced within the thirty days. The statute does not require "the seizure" to be recorded. It is no more a part of the levy than the original attachment on the writ. The *levy* only is to be recorded. R. S., c. 81, § 32; R. S., c. 76, § 16.

All of the proceedings in a levy relate back to the time of the seizure. *Pope* v. *Cutler*, 22 Maine, 107 and 108, and cases there cited; *Haywood* v. *Hildreth*, 9 Mass., 393.

2d. The officer's entire return shows beyond any reasonable doubt that Irish, named in the certificate and return, is the same man who signs his name to the appraiser's certificate, "Joseph Irish." If the return shows that the man who was sworn as appraiser is the same "discreet and disinterested man" who made the appraisal, it is sufficient. It matters not how he is identified, whether by a christian name or description of his person. *Rollins* v. *Rich*, 27 Maine, 558.

3d. It does fully appear by the officer's return that Joseph H. Vigoreux was notified to choose an appraiser, and that the same Joseph H. Vigoreux neglected, &c.

Joseph H. Vigoreux's land was the only property levied upon. The word "neglect" applies to the defendant, who had rights and privileges in making the levy. Quincy, the other debtor, had no interest in the land and no right to choose an appraiser. "Neglect" cannot apply to him. It can only apply to Vigoreux, and if he was not notified, the officer's return is false. *Herring & al.* v. *Polleys*, 8 Mass., 120, 121; *Bugnow* v. *Howes*, 13 Maine, 154; *Fitch* v. *Tyler*, 34 Maine, 463; *Howe* v. *Wildes*, 34 Maine, 566.

4th. The "land" without any qualification was set off. This excludes the idea of any interest less than a fee simple. It is the most comprehensive language which can be used, and means a fee simple.

5th. It is not necessary by the language of the statute

that the time or fact of a seizure should appear in the registry of deeds. If the levy is not recorded it shall be void. R. S., c. 76, § 16.

6th. The statute referred to in the defendant's brief fixes *the time* of seizure for certain *"purposes."* It has nothing to do with this case. R. S., c. 76, § 19.

*Libbey*, for the defendant.

The opinion of the Court was drawn by

BARROWS, J.—Several objections are made to the validity of the levy under which the demandant claims.

It may well be held that Joseph Irish, who subscribes the certificate of the appraisers, is sufficiently identified as the same Irish who is mentioned in the certificate of the oath, and in the officer's return.

The officer's return refers to that of the appraisers, thus subscribed, (in which the administration of the oath is also set forth,) and it speaks of "*the said* appraisers" as having viewed the premises and set out the land. This objection must fail. *Rollins* v. *Rich*, 27 Maine, 557.

Another objection is, that the return of the appraisers does not state the nature of the estate taken, whether a fee simple or a less estate, according to the requirements of c. 76, § 3. But it does state that they viewed "a certain *tract of land*" showed to them as *the estate* of Joseph H. Vigoreux; that they appraised said *land* and set *it* out by metes and bounds.

In the absence of any words of limitation, this may, perhaps, be fairly understood as being an estate in fee simple, held in severalty by Vigoreux.

And, if these were the only objections, the demandant might be held entitled to recover.

Two objections of a more formidable character remain to be considered. The judgment against *Vigoreux & al.*, in satisfaction of which the levy was made, was rendered April 30, 1859. The only return of the levy which was recorded bears date June 6, 1859, and sets forth that the debtor

failing to satisfy the execution, and the creditor finding no personal property and thinking proper to levy the same on real estate, he *that day* caused certain persons to be sworn as appraisers, &c.

The tenant claims under a deed made, acknowledged and recorded, Nov. 8, 1857, the title coming through several mesne conveyances from Joseph H. Vigoreux, who conveyed by deed, duly acknowledged and recorded, March 8, 1853. The tenant appears to be a *bona fide* purchaser for value, and the deeds of warranty, all regularly made and recorded before the levy, will give him the title, unless the levy is connected with the attachment of the premises, on the original writ against *Vigoreux & al.*, dated Feb. 11, 1851. So far as the record of the levy shows, the land was not taken in execution until more than thirty days had elapsed after the rendition of judgment. The plaintiff relies upon an unrecorded memorandum, made by the officer, of a seizure of the premises on May 28, 1859, and contends that the statute does not require the seizure to be recorded, and that it is no part of the levy. This position cannot be sustained, for it is one of the statute requisites of a levy that the officer shall state, in his return on the execution, the time when the land was taken in execution. R. S., c. 76, § 5.

According to the record, it seems to have been done June 6, when the appraisers were chosen and sworn.

Which shall govern, the record, or the unrecorded memorandum of May 28th?

In *Lumbert* v. *Hill*, 41 Maine, 482, the Court say,—" If the judgment creditor, by mistake, do not make his title to the land seized on the execution perfect by the levy, surely there can be no reason why a subsequent attaching creditor or purchaser should be prejudiced by such mistake, *for the record is the statute evidence* of what was done in extending the execution." And again, in the same case,—" A statute title must always be perfect, that is, everything made necessary by the statute, to pass the property, must appear by the return of the officer, and, when recorded, it must of course

appear *by the record* to have been done. And, when the execution and levy thereof have been returned and record-ed, as was done in this case, there can be *no other notice* of the previous proceedings *than the record*, by which subse-quent attaching creditors or purchasers can be affected."

In *Stevens* v. *Bachelder*, 28 Maine, 218, it was ruled by SHEPLEY, J., " as matter of law," that a levy was void and ·without any legal effect in the case, because " the officer's name did not appear of record in the book of records, pro-duced and exhibited by the Register;" and this ruling was sustained, though the original return upon the execution, bearing the name of the officer by whom the levy was made, and which purported to have been placed there at the date of the levy," was in the case. It is true, that the facts up-on which that case was decided arose prior to the enact-ment of the statute provision, that every deed shall be con-sidered as recorded at the time when it is received. But the design of that statute undoubtedly was to make the reg-ister's certificate of the time· of the reception evidence of the *time* of the record, while the deed remained in the office unrecorded, and not to make such a certificate conclusive evidence of notice to third parties of the contents of the deed, in direct contradiction to the record itself. As to this, the true rule seems to be the one laid down in *Hastings* v. *Blue Hill Turnpike Corporation*, 9 Pick., 80, where the · Court held that, by all the rules of evidence, the record must be conclusive; that the certificate of record was only *prima facie* evidence, and that to determine otherwise would be to defeat one of the principal objects of the record, for the certificate would be no notice to subsequent purchasers.

This view gives their full and legitimate effect to §§ 15 and 16, c. 76, R. S., which provide that "the officer is, within three months after completing the levy, to cause the execution, with the return thereon, to be recorded in the registry of deeds where the land lies," and that, "*when not so recorded*, the levy will be void against a person who has purchased for a valuable consideration, or has attached or

taken on execution the same premises without actual notice thereof.".

The remaining objection to the levy seems, according to the doctrine of *Harriman* v. *Cummings*, 45 Maine, 351, to be equally fatal. There were two debtors in the execution, and it does not appear with certainty that the debtor whose land was taken was notified to choose an appraiser, and neglected to do so; the return simply reciting parenthetically, in the statement of the manner in which the appraisers were chosen, as follows, "the *debtor* neglecting to select one." It is insisted by the plaintiff's counsel in argument, that the return is false, unless Vigoreux was the party notified, because the other debtor had no right to choose an appraiser, and could not "neglect."

It is not easy to see why the same style of argument would not apply equally well in *Harriman* v. *Cummings*. The other debtor had no right to "choose," and when it is returned that an appraiser was chosen by the debtor, it might, perhaps, be fairly argued or inferred, that the choice was made by the one who could rightfully do it, and that unless so made the officer's return is false. But there should be nothing left to argument or inference in such a case. The creditor should make it certain that the proper course was pursued, and, not having done so, the levy must be held defective for this reason also.

According to the stipulations of the parties in the report, there must be. *Judgment for the tenant.*

APPLETON, C. J., CUTTING, DAVIS and WALTON, JJ. concurred.